Filed 4/13/22  P. v. Gomez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075214 |
| v. | (Super.Ct.No. FVI02462) |
| RICARDA GOMEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Ferrentino & Associates, Correen Ferrentino, and Julie Goerliner, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

INTRODUCTION

In 1995, defendant and appellant Ricarda Gomez pled guilty to one count of possession for sale of cocaine base. (Health & Saf. Code, former § 11351.5, count 1.) A trial court placed her on formal probation for a period of three years, with 180 days in county jail. On January 1, 2017, Penal Code[1] section 1473.7 went into effect. (Stats. 2016, ch. 739, § 1.) It permits a defendant to challenge a conviction based on a guilty plea where prejudicial error affected the defendant's ability to understand the immigration consequences of the plea. (Pen. Code, § 1473.7.) In 2018, defendant filed a motion to vacate her conviction under Penal Code sections 1016.5 and 1473.7. The court denied the motion.

On appeal, defendant contends the court erred in denying her motion to vacate her conviction. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A confidential reliable informant advised the police that subjects by the names of Rosa and Toto were selling cocaine from their residence. The informant agreed to make

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

[2] The factual background is taken from the probation officer's report and the sheriff's department report.

a controlled buy of cocaine, and he/she was given sheriff's funds to make the purchase. The informant purchased rock cocaine from Rosa[3] and turned it over to the police.

On September 30, 1993, officers executed a search warrant at defendant's residence and found defendant and two males at the kitchen table packaging narcotics. They found a blue lighter and a razor blade next to the packaging materials and rock cocaine. Defendant was seated at the end of the table with 11 pieces of rock cocaine directly in front of her. Three of the pieces were already wrapped and sealed. One of the males was found with a piece of rock cocaine in his hand. The other male was seen dropping marijuana under the kitchen table, and a search of his person revealed approximately 1/4 gram of methamphetamine in his front pocket. One of the officers searched defendant and found $433 in cash. The officers also located documents and bills under defendant's name and the names Ricarda G. Aguirre and Rosita Gomez, which were believed to be her aliases. The sheriff's report noted that this was the fourth search warrant served on defendant, and that the three prior warrants were served on her and her husband, C.L., also known as Todo.

On November 28, 1994, the district attorney charged defendant and her two codefendants with possession for sale of cocaine base. (Health & Saf. Code, former

---

[3] Documents located during a later search of the residence revealed that Rosa was one of defendant's aliases, which included Rosalva Garcia Loya, Ricarda G. Aguirre, and Rosita Gomez.

3

§ 11351.5, count 1.)[4]  At a plea hearing on January 19, 1995, defendant appeared in court in custody, represented by appointed counsel.  She was assisted by a Spanish language interpreter.  Defendant signed a plea agreement and agreed to plead guilty to count 1 as charged, in exchange for a three-year period of probation, with 180 days in county jail.  The plea agreement contained the following immigration advisal:  "If I am not a citizen of the United States, I could be deported, or excluded from admission to the United States, or denied naturalization."  Defendant put her initials next to that advisal.  She also initialed the box indicating that she was not under the influence of any substance that could interfere with her ability to understand what she was doing, or that she was suffering from any condition that could have that effect.  She acknowledged that she could not read or understand English but had the assistance of an interpreter to read the form to her, and she understood all the contents of the form.  The form was signed by defendant, the interpreter, and the prosecutor, but defense counsel's signature was missing.

On February 14, 1995, the court held a hearing and found compliance with *Boykin*[5] and *Tahl*[6], and it confirmed the plea with both parties.  The court confirmed with defense counsel that he received a copy of the probation report and confirmed with

---

[4]  One of the codefendants was also charged with misdemeanor possession of a controlled substance.  (Health & Saf. Code, § 11377, subd. (a), count 2.)

[5]  *Boykin v. Alabama* (1969) 395 U.S. 238.

[6]  *In re Tahl* (1969) 1 Cal.3d 122.

defendant she was ready to proceed. The parties submitted on the probation officer's recommendation. The court withheld pronouncement of judgment and placed defendant on probation for a period of three years on specified conditions, including that she be sentenced to 180 days in county jail. Defendant confirmed that the interpreter reviewed the probation conditions with her, and she understood and accepted them.

In 1997, the court ordered defendant's probation revoked for failure to report to probation as directed and failure to keep the probation officer informed of her residence. Her whereabouts were unknown, and a bench warrant was issued.

In 2004, defendant was arrested. She said she remembered being convicted of a crime in 1995, but because she was "going crazy" and was given medications, she did not remember anything about being placed on probation. She said after being convicted, she was deported to Mexico and came back to the United States within the time period of 1996 to 1998. She said she did not report to probation because she did not remember she had to do so. Defendant said she did not think it was fair that she was being locked up since she was not living the lifestyle she was living before.

The court held a hearing on the probation revocation petition on August 2, 2004. Defendant admitted the allegations, and the court found her to be in violation of probation. However, it then reinstated her on probation on the same terms, but with some modifications, including that she serve 365 days in county jail.

On April 24, 2013, defendant filed a motion to vacate her conviction pursuant to sections 1018 and 1016.5. The motion was denied on December 5, 2014.

5

On October 3, 2018, defendant filed a motion to vacate her conviction, pursuant to sections 1016.5 and 1473.7, alleging that the court failed to advise her that her guilty plea may have adverse immigration consequences, and her plea counsel failed to investigate or discuss immigration consequences with her at all. She also claimed her counsel failed to seek an immigration-safe alternative such as pleading to being an accessory after the fact (§ 32), and that she was not told she could proceed to trial to avoid adverse immigration consequences. In her declaration, defendant asserted that she was the mother of seven children, including one was who was severely disabled. She also asserted that her other son was murdered in October 1994, so she was depressed and on medication after her arrest in this case. Additionally, she asserted that she was a victim of domestic violence, she was very poor, and her father was abusive to her and her children. Defendant further stated she was told by the interpreter that entering the plea was her best option, and she pled guilty because she was told she would only serve 120 days, but if she did not plead guilty, she would get a longer sentence and lose her children. Defendant declared, "All I cared about was getting back to my children," and if she knew she would be deported, she never would have entered the plea, and she would have asked for a better offer or would have gone to trial.

On January 22, 2019, defendant filed a supplemental brief, arguing she lacked the ability to meaningfully understand or knowingly accept the actual or potential immigration consequences of her plea. She reiterated that she was not told about any immigration consequences, the interpreter told her the plea was her best option, she was depressed and on medication while in jail due to the death of her son, and she would not

6

have pled guilty if she had known she would be deported. She also pointed out that her plea counsel did not sign the plea form, and that the transcript from the sentencing hearing on February 14, 1995, was void of any advisement by the court of the immigration consequences of her plea.[7]

The People filed an opposition to defendant's motion, arguing that the plea form demonstrates the section 1016.5 advisements were discharged appropriately, defendant signed the agreement and attested under penalty of perjury that her plea counsel explained everything on the form to her, and that in 1995, plea counsel did not have an affirmative duty to provide immigration advice or negotiate an immigration-safe plea. Furthermore, in contrast to her claim that she was depressed and on medication at the time of the plea, defendant assured the court that she was entering her plea freely and voluntarily, and she was not under the influence of any medications or suffering from any condition that interfered with her ability to understand what she was doing.

Defendant filed a reply brief and attached numerous exhibits, including a declaration from an immigration attorney stating that in 1995, plea counsel had a duty to investigate her immigration status, research the immigration consequences of the plea and inform her of such consequences, and that plea counsel rendered ineffective assistance. Defendant also attached letters of support from her children, grandchildren, and others, as well as a declaration from her plea counsel. Plea counsel stated that he had no recollection of her case. He asserted that it was his practice at that time to advise clients

---

[7] We note that the reporter's transcript from the plea hearing has apparently been destroyed.

7

that entry of a guilty plea could result in deportation, and he also relied upon the form advisement. He said he did not attempt to negotiate immigration-friendly pleas at that time, and it was not his practice to do immigration research or consult with an immigration attorney on the consequences of a plea in a specific case.

The court held a hearing on the motion to vacate on February 22, 2019. Defendant's plea counsel testified that in 1995 it was his standard practice to go over the police report and the applicable law with his client, describe any potential pleas and defenses, discuss any offer from the district attorney, and let his client determine whether or not he/she wanted to further litigate the matter or accept the offer. He would also review each box in a plea form and go over his/her rights, explaining them in common language, rather than verbatim. He would have an interpreter assist him for a Spanish speaker. As to the section 1016.5 advisement, he would typically say words to the effect that if a person were to enter the plea, it could result in deportation. It was not his practice to do immigration research, and he had no recollection one way or the other, in the instant case, if he consulted with an immigration attorney before defendant entered a plea. Looking at the plea form, he said it appeared his law firm was appointed to represent defendant in this case, and his name was handwritten by him on the plea form. However, he had no independent recollection of this case. When asked about the fact that he did not sign this plea form, he said, "sometimes things get missed," but it appeared that he filled in the form, and he would assume he was the attorney that appeared on the case that day. He said the missing signature could "just be an oversight."

8

On cross-examination, plea counsel said it was not his practice to do immigration research because, at that time, it was generally thought that the advisement on the plea form was appropriate. He again stated, at that time, he thought that type of charge could result in deportation or exclusion from admission, and that is what he advised the client. He further testified that if his client appeared depressed or under the influence of any substance, it would be his custom and practice to ask for a continuance. He also testified that if a client told him that her child had been recently murdered, and it was obvious they were incapacitated, he would put the matter over until they could be in a better state. Since the plea in this case went forward that day, he assumed there were not any concerns in that regard.

Defendant testified on her own behalf. She said she was born in Mexico, never went to school, did not speak English, and could only read a little in Spanish. She said her youngest son had mental retardation and autism, and she had to do everything for him. He could not feed, bathe, or go to the bathroom by himself. He was five years old in 1995. She was the primary caretaker of him and her other five children. Defendant said she was given medication for depression after her son's murder in 1995, while she was in jail. She further testified that when she was in custody, her primary concern was that her father, who came and got her children when she was arrested, was mistreating them.

Regarding her guilty plea, defendant testified that she was not told of the consequences of pleading guilty. She said she did not remember the court talking to her in the courtroom. She also said she was still depressed from her son being murdered

9

three months earlier, and she was on the medication the jail gave her when she went to court. Defendant said she did not know that after she pled guilty she would be deported to Mexico. She further testified that when she signed the plea form, the most important thing to her was to return to her children. She said she did not meet her plea counsel before the day she signed the plea agreement, and she never talked to him outside of the courtroom. She did talk to him at the hearing, with an interpreter, but she could not remember how long. She also said no alternatives to pleading guilty were discussed with her, and that if she knew she would be deported and separated from her children, who were United States citizens, she would have gone to trial.

On cross-examination, the prosecutor asked defendant if a Spanish interpreter assisted her in reading the plea form when she signed it, and she said she could not remember. She added, "I was really doing bad in my head." When asked whether she remembered if plea counsel was present when the interpreter went over the plea form with her, she said she remembered him being there but did not remember the interpreter reviewing the form with her. When asked if she initialed the boxes on the plea form, she said she did not remember. When asked whether the Spanish interpreter read her the paragraph stating she understood she could be deported, she said she did not remember. However, she agreed that, if someone had not interpreted the form for her, she would not have been able to read it to understand where to initial and sign it. She did not remember signing the plea form but said, "it does seem like my handwriting." When asked if someone told her she would be going to jail if she pled guilty or that she could go to trial, she said she did not remember.

10

The prosecutor then asked defendant if she had sold drugs to somebody 10 days before the police came to her home with the search warrant. She said no. However, she did admit there was rock cocaine in her house when the police arrived. At first, she said she did not remember where she was when the police entered her house. Then she agreed she was sitting at the kitchen table in front of several rocks of cocaine. She then changed her mind and said she was not sitting, but the one sitting there was the father of her children.

The prosecutor reminded defendant she testified that her main concern was who was going to take care of her children while she was in jail. He asked if it was fair to say she would rather have taken the 180 days in jail and deportation, as opposed to spending three, four, or five years in prison, with the same result of being deported, so that she would be out of custody sooner to be with her children. She said yes. The prosecutor showed her a copy of her declaration that was filed in support of her motion and asked if she had seen it before. At first, she said no. She then conceded her signature was on the form, but still said, "I don't remember."

The prosecutor who handled the plea in 1995 also testified. He had no independent recollection of this case. However, he said his custom and habit was to review a file, determine an appropriate disposition, communicate the offer to the defense attorney, then either have a conference with the court about the offer made, or just have the defense attorney discuss the offer with his/her client. Typically, once the defendant agreed to the terms, the defense counsel would complete the plea form and return it to him, and he would sign it. When asked if he was aware there were immigration

11

consequences of some criminal pleas back in 1995, he said yes and added, "We would discuss that at the time of the plea." He said if a defendant requested an interpreter in court, that would be a sign to him that the person was not lawfully in the country or was here on a visa. In that case, he would advise the defense counsel that the person may be here illegally. He would verify with the defense counsel that they had gone over the immigration consequences with their client before he signed the plea form. The prosecutor also testified that, under the facts of this case, he assumed he would have prevailed if he had taken it to trial. He further testified that because defendant was facing deportation in this case as a result of a conviction, whether by trial or by plea, he would not have been willing to offer any plea that would have allowed her to avoid adverse immigration consequences.

After hearing from the parties, the court stated, "I cannot turn a blind eye to the obvious that [defendant's] answers are convenient. She cannot remember signing. Her lawyer didn't talk to her. She would have gone to trial. She was under the influence of medication at the time of the plea. She cares for [her autistic son] 24 hours a day, 7 days a week, and no one else can care for him. Yet . . . she was looking at state prison on what appears to be a straight forward case with little defense." The court then denied the motion, based on the testimony, the evidence, and the exhibits presented.

## DISCUSSION

### The Court Properly Denied Defendant's Motion

Defendant argues the court erred in denying the motion to vacate her conviction under section 1473.7. She claims her plea counsel rendered ineffective assistance by

12

misinforming her about the immigration consequences of her plea since he only provided the general advisement on the felony plea form (i.e., that she *could* be deported) and failed to advise her that deportation was mandatory. She also contends that he failed to consult with an immigration attorney, and failed to "recognize or become aware of" her severe depression regarding the recent murder of her teenage son, which impacted her ability to appreciate the immigration consequences of her plea. She further claims her counsel failed to file a motion to withdraw the plea after receiving the probation report indicating she was born in Mexico. Defendant asserts that she provided corroborating evidence of her mental condition and that she was a single mother with one son who had been murdered and another son that had autism, whom she had to care for. She argues she was prejudiced by counsel's errors since she would not have pled guilty to a charge that would cause her to be deported and permanently separated from her children. She further claims that "whether focusing on [her plea counsel's] misadvice" or her own misunderstanding, "either error supplies prejudice under section 1473.7." The People contend that defendant has failed to establish any error, and the record shows she pled guilty knowing her conviction would lead to removal. We conclude the court properly denied her motion.

A. *Standard of Review*

Our Supreme Court recently determined the standard of review for section 1473.7 motion proceedings. In *People v. Vivar* (2021) 11 Cal.5th 510, 526 (*Vivar*), the court

13

endorsed the independent standard of review.[8]  Under independent review, an appellate

court exercises its independent judgment to determine whether the facts satisfy the rule of

law.  (*Id.* at p. 527.)  When courts engage in independent review, they should be mindful

that independent review is not the equivalent of de novo review.  (*Ibid.*)  An appellate

court may not simply second-guess factual findings that are based on the trial court's own

observations.  (*Ibid.*)  Factual determinations that are based on the credibility of witnesses

the superior court heard and observed are entitled to particular deference, even though

courts reviewing such claims generally may reach a different conclusion from the trial

court on an independent examination of the evidence even where the evidence is

conflicting.  (*Ibid.*)

In section 1473.7 motion proceedings, appellate courts should similarly give

particular deference to factual findings based on the trial court's personal observations of

witnesses.  (*Vivar*, *supra*, 11 Cal.5th at pp. 527-528.)  However, where the facts derive

entirely from written declarations and other documents, "there is no reason to conclude

the trial court has the same special purchase on the question at issue; as a practical matter,

'[t]he trial court and this court are in the same position in interpreting written

declarations' when reviewing a cold record in a section 1473.7 proceeding.  [Citation.]

---

**8** We reserved ruling on defendant's request for judicial notice, filed on April 16, 2021, for consideration with this appeal.  She requests that we take notice of The People's answer brief on the merits in *People v. Vivar*, S260270 (on petition for review to the California Supreme Court from *People v. Vivar*, *supra*, 43 Cal.App.5th 216).  We now deny that request.

14

Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528.)

B. *Defendant Has Failed to Establish She is Entitled to Relief*

Section 1473.7, which became effective on January 1, 2017 (Stats. 2016, ch. 739), provides that a person who is no longer imprisoned may move to vacate a judgment if the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) Thus, a defendant is required to demonstrate that she suffered prejudicial error. (*Ibid.*) "The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (§ 1473.7, subd. (e)(1).)

"Ineffective assistance of counsel that damages a defendant's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a guilty plea, if established by a preponderance of the evidence, is the type of error that entitles the defendant to relief under section 1473.7. [Citation.] To establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that he was prejudiced by the deficient performance." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 75 (*Ogunmowo*); see *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) We note that in 2018, the following

15

language was added to section 1473.7, subdivision (a)(1): "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (See *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133.) In other words, a superior court can make a finding of legal invalidity "if the defendant simply proves by a preponderance of the evidence a 'prejudicial error damaging [her] ability to *meaningfully understand*, defend against, or *knowingly accept* the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.' " (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871.)

1. *Defendant has failed to establish her counsel's performance was deficient*

Defendant asserts that her counsel misinformed her about the immigration consequences of her plea since he only advised her of the *possible* immigration consequences. She also contends he failed to consult with an immigration attorney. She claims her trial counsel's performance was defective under *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*). In *Padilla*, the defendant, a lawful permanent resident, pled guilty to drug charges involving the transportation of a large amount of marijuana in his tractor-trailer. Before the defendant pled guilty, his counsel failed to advise him that he would face deportation after pleading guilty and, in fact, told him he " ' "did not have to worry about immigration status since he had been in the country so long." ' " (*Id.* at p. 359.) The United States Supreme Court concluded that it was not difficult to find deficiency since the consequences of the defendant's plea "could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." (*Id.* at p. 369.) The Supreme Court stated that to

16

provide effective assistance of counsel, "we now hold that counsel must inform [the] client whether [the] plea carries a risk of deportation." (*Id.* at p. 374.)

*Padilla* is not applicable here since defendant pled guilty 15 years before the opinion in *Padilla* was issued. In *Chaidez v. United States* (2013) 568 U.S. 342 (*Chaidez*), the Supreme Court concluded that *Padilla* "announced a new rule" by imposing an obligation on trial counsel to understand and accurately explain the immigration consequences of a plea to a defendant before the entry of that plea. (*Chaidez*, at pp. 352-354, 357-358; *Padilla, supra*, 559 U.S. at p. 369.) Furthermore, the Supreme Court held that *Padilla* could not be applied retroactively to cases that were final at the time the opinion in *Padilla* was issued. (*Chaidez*, at p. 358.) Therefore, defendant's plea counsel here had no affirmative obligation in 1995 to research and advise defendant of the actual immigration consequences of her plea. (*Id.* at pp. 357-358.) As such, counsel's representation did not fall below the then-contemporary reasonable objective standard of practice.

Defendant argues that the obligation under *Padilla* "had long been the law in California," and cites section 1016.2, which stated that it was the intent of the Legislature to codify *Padilla* and related case law. (§ 1016.2, subd. (h).) However, section 1016.2 did not become effective until 2016. (Stats. 2015, ch. 705, § 1; Assem. Bill No. 1343).)

Defendant also cites *People v. Soriano* (1987) 194 Cal.App.3d 1470 (*Soriano*), in support of her claim. In that case, the defendant submitted a declaration stating that he spoke with his attorney twice prior to sentencing. He informed her that he was an immigrant, and she told him that if he pled guilty he would serve just eight months in

17

county jail.  He asked his attorney if he would be deported if he pled guilty, and she said he would not.  Subsequently, the defendant asked his attorney whether a guilty plea would prohibit him from obtaining citizenship.  The attorney responded in the negative.  He again asked if he would be deported, and she assured him he would not.  The defendant stated that based on these assurances, he pled guilty.  (*Id*. at p. 1478.)

Defendant's reliance on *Soriano* is misplaced since that case is factually distinguishable.  Contrary to defendant's claim, *Soriano* did not establish that defense counsel had a duty to inform her of the actual, not merely possible, immigration consequences of her plea.  In *Soriano*, the defendant stated in a declaration that he told his counsel he was an immigrant.  (*Soriano*, *supra*, 194 Cal.App.3d at p. 1478.)  It was uncontested "that counsel, knowing defendant was an alien, resident in this country less than five years at the time he committed the crime, did not make it her business to discover what impact his negotiated sentence would have on his deportability."  (*Id*. at p. 1480.)  The defendant specifically asked if he would be deported if he pled guilty.  (*Id*. at p. 1478.)  The *Soriano* court concluded that the trial counsel was ineffective because her response to the defendant's immigration questions was insufficient.  (*Id.* at p. 1482.)  This was so because counsel assured the defendant twice, in response to his direct questions, that he would not be deported.  (*Id*. at p. 1478.)

Unlike *Soriano*, there was no allegation and no evidence here that defendant asked her counsel about the immigration consequences of her plea, that counsel similarly misadvised her, or that defendant entered her guilty plea based on her counsel's false assurances.  (*Soriano*, *supra*, 194 Cal.App.3d at p. 1479.)  Thus, *Soriano* is inapposite.

18

Defendant also claims that "the inaccuracies of advice and irregularities of the proceedings" are evidenced by the fact that the plea form was not signed by her plea counsel. As the court noted in its ruling, counsel erred by not signing the plea form; however, we agree with the court that it appears to have been an oversight. This is corroborated by the fact that defense counsel specifically testified that he recognized his handwriting on various parts of defendant's change of plea form. He also testified that his practice was to sit with his client and the interpreter while the interpreter translated the change of plea form for the client. We also observe that at the sentencing hearing, the court reviewed the plea form, found compliance with *Boykin* and *Tahl*, confirmed the plea, and both plea counsel and the prosecutor stipulated. Moreover, the prosecutor signed the plea agreement and, although he had no recollection of this case years later, he testified that it was his practice to verify with defense counsel that they had gone over the immigration consequences with their client before he signed a plea form. In any event, plea counsel's error in not signing the plea agreement is not an error that damaged defendant's ability to meaningfully understand the immigration consequences of her plea. (*Ogunmowo*, *supra*, 23 Cal.App.5th at p. 75.)

To the extent defendant is claiming that her plea counsel did not advise her of any immigration consequences at all, she failed to establish such error.[9] In her declaration, she alleged that she was "not told about any immigration consequences for any potential plea," that "[n]o one discussed going to trial," that she pled guilty because she was told

---

[9] We note that this claim is at odds with her claim that counsel misadvised her by only telling her she could be deported, rather than that she would be deported.

19

she would only serve 120 days, but if she did not plead guilty, she would get a longer sentence and lose her children, and that she "was not told [she] could be deported." "An allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting appellant's claimed failures." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223-224.) "[T]he 'easy' claim that counsel gave inaccurate information further requires corroboration and objective evidence because a declaration by defendant is suspect by itself. The fact is courts should not disturb a plea merely because of subsequent assertions by a defendant claiming his lawyer was deficient. The reviewing court should also assess additional contemporaneous evidence." (*Ibid.*)

Defendant has presented no such corroborating evidence here. We find the statements in her declaration that she pled guilty without having been told about any immigration consequences not credible in light of the signed plea agreement. Defendant initialed the box next to the statement in the plea agreement stating: "If I am not a citizen of the United States, I could be deported, or excluded from admission to the United States, or denied naturalization." Furthermore, she initialed the boxes verifying that she understood she had the right to a trial, that she had sufficient time to consult with her attorney, that her attorney explained everything in the agreement to her, and she fully understood everything. Although defendant claims she does not remember the interpreter reviewing the form with her or reading the above-cited statement in the agreement, and she does not remember putting her initials on the plea form, such claims are not credible,

20

in light of the fact that the interpreter signed the agreement stating he translated the entire plea form to her. Moreover, the form reflects defendant's initials and signature.

Defendant also claims that her counsel erred by failing to recognize her severe depression regarding her son's murder and by failing to file a motion to withdraw the plea after receiving the probation report and learning she was born in Mexico. Neither claim has merit. Although her plea counsel did not specifically recall this case, he testified that if his client appeared depressed or under the influence of any substance, it would be his custom and practice to ask for a continuance. He also testified that, since the plea in this case went forward that day, he assumed there was no concern in that regard. Moreover, on the plea form, defendant represented that she was not under the influence of any medication or suffering from any condition that impacted her ability to understand what she was doing. We also note that the court did not express any concerns over her state of sobriety while taking the plea. Defendant's allegation that her counsel failed to file a motion to withdraw her plea is not relevant to a claim of counsel's error at the time of the plea, or error that damaged her ability to meaningfully understand the immigration consequences of her plea. (*Ogunmowo*, *supra*, 23 Cal.App.5th at p. 75.)

Additionally, we agree with the trial court that defendant's memory of her case appears to have been selective and self-serving and rendered her not credible. Defendant testified that she did not remember if there was a Spanish interpreter there assisting her with reading the plea form when she signed it. Specifically, she did not remember if the Spanish interpreter reviewed the plea form with her, or if he read the paragraph regarding the immigration consequences of the plea. She did not remember initialing the boxes on

21

the plea form or signing it. Defendant claimed she could barely remember the day she pled guilty. Yet, she remembered that she was not told of the consequences of her pleading guilty. She remembered she was on medication when she went to court, and that she was still suffering from depression from her son's murder that day. She remembered that when she saw her counsel in the courtroom at the plea hearing, she only spent "very little time" talking to him. Defendant also remembered that no other alternatives to pleading guilty were discussed with her.

Furthermore, some of defendant's testimony was inconsistent with the evidence, thereby rending her not credible. She testified that, when the police came to her house, she was not sitting at the kitchen table in front of the rock cocaine. Yet, the police report showed she was sitting at the table when they arrived. She also testified that she took care of her autistic son, that it was a 24 hours a day, seven days a week activity for her, that he was not able to do anything for himself, and that she did not let him go out into public without her. However, a review report from the Institute for Applied Behavioral Analysis that was submitted in support of her motion stated that her son was employed at Del Taco four days a week, and that he was "able to clock in and out independently at Del Taco." Another report stated that he lived with his mother, along with two of his brothers, who were both married and that defendant herself said her son was improving on his self-care and was able to complete personal grooming, bathing, and fixing fast meals. The report also stated that "if he goes out on the street he tells his mother where and when is back [sic], and he is always on time. [He] uses his cell phone to call his mother throughout [the] day." The report further stated that his weekly schedule included

22

attending school on Mondays, volunteering at Meals on Wheels, going for walks, going to the gym, eating out, and going to the library.

To the extent defendant is contending she is entitled to relief due to her own lack of understanding, we disagree. She claims that her depression and state of mind at the time of her plea prohibited her from understanding and appreciating the actual immigration consequences of her plea. Again, however, she represented to the court that she was not suffering from any condition that impacted her ability to understand what she was doing. Thus, her self-serving claim is not credible.

2. *Defendant has failed to establish prejudice*

We recognize that defendant was not required to establish ineffective assistance of counsel, but only that her counsel's error was prejudicial and damaged her "ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" of her plea. (§ 1473.7, subd. (a)(1); see *People v. Camacho* (2019) 32 Cal.App.5th 998, 1008-1009.)[10] However, even if she showed her counsel erred by not advising her that deportation would be mandatory, or that she did not understand the consequences of her plea, defendant has failed to establish that she was prejudiced. "[S]howing prejudicial error under section 1473.7, subdivision (a)(1)

_____

**10** "The California Supreme Court has held . . . that the words 'may have' in a section 1016.5 immigration advisement are not an adequate immigration advisement for defendants charged with serious controlled substance offenses. [Citation.] Defendants must be advised that they *will* be deported, excluded, and denied naturalization as a mandatory consequence of the conviction. . . ." (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1065, citing *People v. Patterson* (2017) 2 Cal.5th 885, 889.) Thus, although we find no error amounting to ineffective assistance of counsel, we do note the advisement in this case appears erroneous under the *Patterson* decision.

23

means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. (*Vivar*, *supra*, 11 Cal.5th at p. 529.) Defendant argues that she would not have taken the plea deal if she knew she would be deported because of her six children, and particularly because she was her autistic son's primary caretaker. Her declaration contains the only direct evidence presented as to whether she would have taken the plea had she been aware of the immigration consequences. However, " 'a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted [or rejected] a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence.' " (*People v. Bravo* (2021) 69 Cal.App.5th 1063, 1074.)

Defendant stated in her declaration that if she knew she would be deported or forever banned from coming back into the United States, she would have asked for a better deal or asked to go to trial. However, she also stated that no one discussed going to trial, indicating she did not know she could go to trial. Moreover, her declaration is contradicted by the plea form she initialed indicating she understood she had the right to a trial. As to her claim that she would have asked for a better deal, the prosecutor who handled this case testified that under the circumstances of this case, he would not have been willing to offer any plea that would have allowed her to avoid adverse immigration consequences.

24

Furthermore, the evidence against defendant was strong. It showed that a confidential informant bought cocaine from her at her house. Subsequently, the police executed a search warrant there and found her and two males at the kitchen table packaging narcotics. Defendant had 11 pieces of rock cocaine directly in front of her and $433 in cash on her person. She was charged with possession of cocaine base for sale, which carried a maximum penalty of five years. (Health & Saf. Code, former § 11351.5.) However, pursuant to the plea agreement, she was only sentenced to 180 days in local custody and probation. Under these circumstances, it is not likely she would have risked going to trial, being convicted, and facing a state prison term as well as the same immigration consequences. Moreover, we observe that defendant said in her declaration that all she cared about was getting back to her children. At the hearing, she expressly acknowledged that she would take 180 days in jail plus deportation, rather than spend three to five years in prison with the same result of being deported so that she would be out of custody sooner to be with her children.

Defendant mentions the offenses her codefendants were convicted of and asserts that she has diligently tried to "improve her immigration status" since her plea by filing other motions. These points are irrelevant and only show she regrets pleading guilty. She also contends that, had she gone to trial, a reasonable juror could find the prosecution had not proven she was in possession of the drugs for sale since there were two other parties present. She further asserts that had she been convicted, it was likely that the court would have still granted her probation or perhaps given her a lower sentence. However, these claims are purely speculative.

25

Ultimately, defendant has not shown her plea counsel's performance in 1995 was deficient, that prejudicial error damaging the defendant's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of her plea of guilty occurred, or that she was prejudiced. We conclude the court properly denied the motion to vacate her conviction.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

RAMIREZ _____
P. J.

MENETREZ _____
J.

26